515 P.2d 130 (1973)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of K. S. and M. S., Children,
and Concerning S. S., Respondent, and
J. S., Respondent-Appellant.
No. 72-419.
Colorado Court of Appeals, Div. II.
October 2, 1973.
*131 William B. Paynter, Jr., Akron, for petitioner-appellee.
C. H. Anderson, Brush, for respondent-appellant.
Selected for Official Publication.
SMITH, Judge.
In this action commenced in the Washington County District Court, the County Welfare Department alleged that M.S. and K.S., two minor children, were dependent and neglected. The welfare department sought termination of the parental rights of J.S. and S.S., the natural parents of the children. At the conclusion of the adjudicatory hearing, the trial court decreed that the children were dependent and neglected. At the subsequent dispositional hearing the court terminated the rights of both parents. Although J.S., the father, appeared at both hearings, S.S., the mother, did not. J.S., while not contesting the dependency decree, appeals the ruling terminating his rights, urging that the ruling is contrary to the evidence and the law, not in the best interest of the minor children, and that it determines that he is an unfit parent on the basis of the actions of S.S., from whom he is now divorced. We reverse that portion of the judgment terminating the parental rights of J.S.
J.S. and S.S. have been married to one another three times and have been divorced twice at the time of the hearing. A third divorce has now become final. Five children were born of these marriages. Subsequent to each divorce, J.S. was given custody of the children. In 1967, during one period of divorce, while J.S. had custody of the children, the youngest child drowned. It appears from the record, however, that the drowning occurred while the child was visiting S.S., and was a result of S.S.'s failure to provide adequate supervision.
*132 The petition for an adjudication of dependency and neglect was initiated by the welfare department as the result of an extended altercation between the parents that was initiated by S.S. During the altercation, J.S. left the home to seek rest and refuge in a motel and was followed there by S.S. The children, aged ten and three, were left uncared for and unsupervised during this time. The police subsequently located S.S. in a motel in Akron. Her face was bloodied, and the police took her to the hospital in a drunken condition. On the basis of this and other evidence, the court finding that the children were neglected and dependent, commented as follows:
"[E]ven though it [leaving the children uncared for] was his [respondent's] wife's fault. He had nothing to do with it."
At the dispositional hearing, testimony was given that K.S., the ten-year-old daughter, was two or more years behind in her school work and showed definite signs of psychological problems. The testimony, however, disclosed that J.S., at the time of the hearing, had arranged for the children to stay with another family while he was required to be absent at work and that he had also arranged to provide support for the children if he were permitted to retain his parental rights. At the conclusion of the dispositional hearing, the district court terminated the parental rights of both S.S. and J.S. Even though the court recognized J.S.'s concern for his children, the court stated its ruling inter alia:
"[I'm] afraid that if they [the children] were given into the custody of the Respondent [J.S.] . . . that we'll have a repeat of what we have already twice before heard."
Chapter 22 of the Colorado Revised Statutes (Colorado Children's Code) prescribes the procedure for the adjudication and disposition of allegedly neglected and dependent children, and provides for two distinct hearings by the court. The purpose of the adjudicatory hearing is to determine whether the facts show, by a preponderance of the evidence, that the child is in fact neglected and dependent, as defined by 1967 Perm.Supp., C.R.S. 1963, 22-1-3(19). While the acts or omissions of the parents singly and together are relevant in determining the status of the child, the primary focus of the adjudicatory hearing is to determine the condition and circumstances of the child at the time of the hearing.
The dispositional hearing serves a separate function. Having determined that the child is dependent and neglected, the court has the duty to formulate a remedy which will secure for each child "such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society." See 1967 Perm.Supp., C.R.S. 1963, 22-1-2. The paramount consideration is the best interests of the child with due consideration being given to the past history of the child while in the custody of the parent or guardian. Johnson v. People, 170 Colo. 137, 459 P.2d 579.
1967 Perm.Supp., C.R.S. 1963, 22-3-11, provides alternative methods of disposition for children adjudicated neglected and dependent: temporary custodial supervision by the state, including possible denial of custody to the parents until rehabilitation has occurred or until the child has reached such an age as to be no longer subject to the code; or termination of parental rights, which means the permanent and complete dissolution of any legal parent-child relationship. Other than directing the court to operate in the best interests of the child, the code establishes no standards and provides no guidance to the courts in choosing between these alternatives.
While the adjudication of a child as dependent and neglected under the code, and even the assumption of custody and control by the state may temporarily alter the relationships between child and parent, such actions do not effect any change in the basic rights and responsibilities of one to the other. On the other hand, termination of parental rights, so called, severs permanently, *133 not only the rights and obligations of the parent relative to the child, but those of the child as well. The child loses the right of support and maintenance, for which he may thereafter be dependent upon society; the right to inherit; and all other rights inherent in the legal parent-child relationship, not just for the period during which he is subject to the code, but forever. No degree of rehabilitation by the parent or achievement by the child can restore the relationship.
The basic differences between these dispositions should be obvious. Many state legislatures have provided guidelines for the courts by limiting termination of parental rights to statutorily defined, extreme situations. Wis.Stat. § 48.40 (1971); see Kan.Stat.Ann. § 38-826 (1972 Supp.).
Where the legislatures have failed to provide clear guidelines, the courts have attempted to supply classifications in compliance with a perceived legislative intention to limit termination of parental rights to special cases. See Fritts v. Krugh, 354 Mich. 97, 92 N.W.2d 604. The Colorado Children's Code does not by its language clearly recognize the substantial difference between deprivation of parental custody and termination of parental rights, and a paucity of cases exists dealing with this issue both in Colorado and elsewhere. We believe that the legislation was enacted with an understanding and appreciation of the societal interest in maintaining and protecting the natural parents' interests in the child, and those of the child in the parent, absent parental acts or omissions sufficiently harmful to the child to mandate a forfeiture of those rights. It is our view that parental rights are personal between each parent and child and that termination following a determination of dependency and neglect should result only where there is a history of severe and continuous neglect by the particular parent whose rights are sought to be terminated, a substantial probability of future deprivation, and a determination that under no reasonable circumstances can the welfare of the child be served by a continuation of the legal relationship of the child with that parent.
The standard applied in this case is not in conflict with the standards used in Karkanen v. Valdesuso, 515 P.2d 128 (Colo. App.1973). That case deals with the wholly separate issue of termination of parental rights pursuant to a stepparent adoption, the grounds for which are clearly defined by 1969 Perm.Supp., C.R.S.1963, 22-4-7(1) (f), (i).
In the case at bar, after hearing all the evidence at the adjudicatory hearing, the district court determined that, although the marital entity had created circumstances causing the children to become dependent and neglected, the respondent, J.S., was not at fault. Notwithstanding that finding and those made at the dispositional hearing, the court terminated the parental rights of J.S. In so doing, the court failed to determine that the conduct of J.S. contributed to the neglect and dependency of K.S. and M.S., and that the evidence portends such future conduct on the part of J.S. as to require severance of the filial relationship which, under normal circumstances, our society seeks to preserve and protect. The evidence in our view would not support such a finding.
The judgment terminating the parental rights of J.S. is reversed.
SILVERSTEIN, C. J., and COYTE, J., concur.